## TASKER *v.* THE KENTON INS. CO.

In assumpsit on a written contract, the plaintiff cannot avoid a part of the contract on the ground that his agent, who made the contract for him, was not authorized to make that part of it.

ASSUMPSIT, on a policy of insurance. Plea, the general issue. Reported, 58 N. H. 469. October 2, 1875, the plaintiff went to the office of one Robinson, an insurance agent at Claremont, and procured of him three concurrent policies of insurance, for $1,000 each, on his saw-mill, machinery, and steam-engine connected therewith. Each policy covered the same amount on each of the items of property. When the plaintiff took the policies, Robinson agreed with him to keep him insured in three good companies to the amount in all of $3,000. The plaintiff paid the premium on the three policies when they were delivered to him. One of them was in the Penn Insurance Company, of which company Robinson was agent. By the evening mail of October 17, 1875, Robinson received a notice from the general agents of that company requesting him to cancel that policy because he was not authorized to insure such property. Robinson, supposing the company had the right to cancel the policy, the next morning marked it on his books as cancelled, and transferred the premium from his account as agent of the Penn company to his account as agent of the defendants, and at the same time wrote the policy in suit to take the place of the policy in the Penn company. October 19 he sent to the defendants a daily statement as agent, giving them information of the property insured, the amount of the premium, and such other matters as they required in such statements; but the money was never paid over to them. Robinson testified that he credited them with the money, and that there is a balance in his favor against them.

The property covered by the policy was destroyed by fire on the night of October 18, 1875. Robinson had not then notified the plaintiff of the request of the Penn company to cancel their policy, and the plaintiff still held it. The morning after the fire Robinson notified both the Penn company and the defendants, through their general agent for New England, of the loss, and the defendants' adjuster came the next day to Claremont, and, on learning the facts, requested Robinson to hold the policy; and a short time

afterwards the defendants requested Robinson to return the policy to them, and in accordance with that request he did return it. October 20, 1875, the plaintiff was notified by Robinson that he had written the Kenton policy; but the plaintiff never had it in his hands. November 13, 1875, the plaintiff made proof of loss under the Penn policy, and forwarded the same to that company, and he has since received $300 for an assignment of that policy. In that proof he declared that he had no insurance except under the policies issued October 2, 1875, and he did not allude to the Kenton policy. He also stated that he had done no act, nor had any one with his privity or consent done anything, to render the policy void, or invalidate his right to claim thereunder.

The Penn company having become embarrassed, the plaintiff, October 3, 1876, made proof of loss against the defendants. The defendants' policy contained a provision in substance that no suit should be maintained on it unless the same was commenced within a year from the date of the loss. This suit was not commenced within that time. The plaintiff introduced evidence tending to show that he had no knowledge of this condition in the policy until after the suit was brought. The defendants moved for a nonsuit, which was denied, and they excepted.

They then requested the court to instruct the jury as follows:

1. If the jury find that Robinson was agent of the Penn company, and made a contract with Tasker to insure his mill in that company, and issued to him a policy in that company for $1,000 and received payment therefor, and find no act of Tasker which annulled the contract, the Penn policy would be in force until the Penn company notified Tasker that it would not carry the risk, and tendered him back the unearned premium, or offered him something which Tasker accepted in lieu thereof.

2. Robinson could not at the same time be the agent of both Tasker and the insurance companies; that he could not both give and receive the notice that the Penn company declined to carry the risk, and both offer and accept the Kenton policy in place of the Penn policy, in such a manner as to bind both Tasker and the two insurance companies in these transactions.

3. The Kenton policy could not be in force until there had been an agreement of the Kenton company on the one part to take the risk and issue a policy, and on the other part by Tasker that he would insure with that company, and accept and pay for its policy.

4. Robinson's intention to exchange the policies did not release the Penn company from liability, or fix the liability of the Kenton company; but that there must have been a surrender of the Penn policy, or an agreement to that effect by Tasker, and an acceptance by him of the Kenton policy in its stead, before the Kenton company could be liable.

5. If the jury find that the Penn policy was actually in force at the time of the loss, and that the Kenton policy was made and

intended only to assume the risk when the liability of the Penn company ceased, the defendants are not liable.

6. If the jury believe that Tasker or his attorney either did know the provisions of the Kenton policy in regard to time, manner, and form of notice and proof of loss, and clause limiting right of action to twelve months, or might by due diligence have learned them, then Tasker is bound by its provisions as much as if he in fact held the policy.

7. If there was an understanding between Robinson and Tasker, by which Robinson was authorized to place the risk in whatever companies he chose, and he selected the Kenton company for him, Tasker should have ratified the contract at the earliest opportunity, and as soon as brought to his knowledge; and his acts in pursuing the Penn company, and neglect to make proof of loss against the Kenton, are evidence tending to show that he refused to ratify this contract with the Kenton.

8. There is no evidence that the Penn company has undertaken to avoid its liability; that the company was not bound to avail itself of any defence it might have had on the ground that Robinson had exceeded his authority; that even if the Penn company might not on this account have been bound by the contract which Robinson undertook to make, and could have escaped liability on their policy, it was still capable of ratification by the company; and the evidence shows not only that his contract has been ratified and confirmed by the company, but that they have actually performed it.

9. The plaintiff is estopped, by his statement in the proof of loss furnished by him to the Penn company, from denying that that policy is in force.

10. The evidence shows only one of these two policies, the Penn or the Kenton, in force at the time of the loss.

11. The evidence shows that the Penn policy was in force at the time of the loss.

The court instructed the jury that if there was a valid and binding contract of insurance between the plaintiff and the defendants, he was entitled to recover; that this depended on the understanding of the parties; that if Robinson was the defendants' agent, his acts would be their acts; that if he in good faith wrote the policy in suit, understanding that the Penn policy was cancelled, and transferred the premium to his account as agent of the defendants, they would be liable in this suit; that he might be the agent of both parties; that if it was agreed and understood between him and the plaintiff that he should keep the plaintiff insured in three good companies for one year, he might do any act required of the plaintiff necessary for that purpose, and his acts in so doing would be the plaintiff's acts, and binding on him; that whether or not there was a binding contract of insurance between the plaintiff and the Penn company was immaterial, except as bearing on the ques-

tion whether there was in fact a contract between the plaintiff and the defendants; and the fact that the plaintiff made proofs of his loss against the Penn company was immaterial, except as it tended to show the understanding of the parties on the question whether the defendants' policy was binding on them.

On the question whether the defendants could set up as a defence to this suit the provision of the policy requiring the suit to be brought within a year after the loss occurred, the court instructed the jury that, inasmuch as the evidence tended to show that the plaintiff never had the policy in his possession, that provision of the policy would not be binding on him and prevent his recovery, unless he or his attorney had knowledge of it, or notice of such facts in regard to it as should have put them, as reasonable men, on inquiry in regard to it.

To the instructions given, and a refusal to give those requested, the defendants excepted.    Verdict for the plaintiff.

*Holt*, for the defendants.

The Penn policy was in force at the time of the fire, and the defendants are not liable.    *M. S. T. Co.* v. *W. A. Co.*, 125 Mass. 110;    *Ins. Co.* v. *Webster*, 6 Wall. 129;    *Ins. Co.* v. *Ins. Co.*, 17 Barb. 132;    *Vail* v. *Judson*, 4 E. D. Smith 165.    The Penn company could not terminate their contract by notifying their agent that they declined the risk.

A person cannot be agent of both contracting parties, in the same transaction, without their mutual consent.    *Walker* v. *Osgood*, 98 Mass. 348;    *Rupp* v. *Sampson*, 16 Gray 398;    Story Agency, ss. 31, 211.    This case does not come within the exception as to brokers.    A contract made by a person as agent of both parties, is voidable at the election of either party.    *N. Y. C. Ins. Co.* v. *N. P. Ins. Co.*, 14 N. Y. 85.

The plaintiff cannot sustain this action unless Robinson was his agent.    And if Robinson was his agent, the plaintiff is chargeable with his agent's knowledge of the terms of the contract in regard to the limitation of right of action to one year from time of loss. *The Distilled Spirits*, 11 Wall. 356, 366.    This rule is based on the principle that it is the duty of an agent to communicate to his principal the knowledge he has respecting the subject of negotiations.    Story Agency, s. 140;    *Hovey* v. *Blanchard*, 13 N. H. 145; *Patten* v. *Ins. Co.*, 40 N. H. 375;    *Hart* v. *Bank*, 33 Vt. 252.    If Robinson was the plaintiff's agent, he was his agent for the purposes of this contract, part of which the plaintiff proposes to adopt, and the rest reject.    The principal cannot ratify in part and reject in part.    *F. L. & T. Co.* v. *Walworth*, 1 Const. 433, 446, 447; *Express Co.* v. *Palmer*, 48 Ga. 85;    *Cochran* v. *Chitwood*, 59 Ill. 53;    *Widner* v. *Lane*, 14 Mich. 124;    *Krider* v. *Trustees*, 31 Iowa 547;    *Billings* v. *Morrow*, 7 Cal. 171;    *Hardeman* v. *Ford*, 12 Ga.

205; *Menkens* v. *Watson*, 27 Mo. 163; *Henderson* v. *Cummings*, 44 Ill. 325; *Coleman* v. *Stark*, 1 Oregon 115.

The plaintiff elected to stand on the Penn policy, and received $300 on it, and thereby rejected and repudiated the Kenton policy. He could not treat the Penn contract as binding and rescinded at the same time. *Sumner* v. *Parker*, 36 N. H. 449; *Hathaway* v. *Payne*, 34 N. Y. 92, 109.

*Wait* and *Parker*, for the plaintiff.

Robinson was the agent, as well of the defendants as of the Penn company, and authorized to write their policies. He agreed with the plaintiff that he would keep him insured in three good companies for one year to the amount of $3,000. The agreement was not for three policies merely, but that the plaintiff should be kept insured in three good companies. In case. any one of the three original policies proved ineffectual or insufficient, good faith required Robinson to write a policy to take its place in some other good company of which he was agent. And when such a policy was written, he became by this agreement the agent of the plaintiff to receive the delivery of it. To this extent he might well be the agent of both parties. *Clark* v. *Ins. Co.*, 40 N. H. 333; Angell Ins., *s.* 476.

There is no incompatibility in the same person's acting as agent to apply for and at the same time to write a policy, and we suppose it to be a very common practice. When, after the Penn policy had been cancelled, the policy in the Kenton company was written and the premium was transferred to the account of the latter,. the contract became complete, and the responsibility of the defendant became fixed.

The doctrine of estoppel has no application to this case. The plaintiff may have made a very reasonable and just, or a very unreasonable and unjust, claim upon the Penn company, and may have obtained, very rightfully or wrongfully, some money from the latter. It does not follow from this, in legal intendment, that he had no valid policy in the defendant company; nor was there any evidence that the latter were by it induced to, or that they did, change their position, or that they have lost anything thereby. That was evidence to the jury on which they could find whether there was a valid and subsisting policy in the defendant company or not, but it afforded no ground for a nonsuit.

The defendants contend, that Robinson being authorized to receive delivery of the policy for the plaintiff, the latter is to be charged with his knowledge of its contents; and that consequently he is bound by the provision which limits the bringing of an action upon it to one year from the loss. That, as a general proposition, notice to an agent for the transaction of business is notice to the principal, is not, we suppose, to be denied. That it is true under

all conceivable circumstances, and regardless of the equities of any special case, we feel warranted in believing is neither law nor reason. And in this we are borne out by the following authorities: *Plympton* v. *Preston*, 4 La. Ann. 356; *Ross* v. *Houston*, 25 Miss. 591: *Champlin* v. *Laylin*, 6 Paige (N. Y.) 189; *Merril* v. *Sloan*, 1 Murph. (N. C.) 121; *Hart et als.* v. *F. & M. Bank*, 33 Vt. 252; *Houseman* v. *Girard, &c., Assoc.*, 81 Pa. St. 256; *Farrington* v. *Woodward*, 82 Pa. St. 259; *Wyllie* v. *Pollen*, 32 L. J., N. S., Ch. 783; *Anketel* v. *Converse*, 17 Ohio St. 11; *Hoppock* v. *Johnson*, 14 Wis. 303. The reason of the general rule, which is doubtless elementary, we conceive to be, that the agent is such to receive notice, as well as to contract, for the principal; and a party having dealt in view of the information to the agent, and of the state of facts known to him, justice requires that the principal should be bound. But, where the circumstances are otherwise, the reason of the rule fails, and the rule itself ought not, and, by the above cited authorities, is held not, to apply.

The notice to the agent, Robinson, which is sought to be charged upon the plaintiff, was not gained in his employment for the plaintiff; it was gained in the employment of the defendants, and was never in fact communicated to the plaintiff. Robinson was the general agent of the defendants; his knowledge of the contents of the policy was gained in their employ; he was all the time acting in their interests, under their obedience, and from an exclusive sense of duty to them. In writing the policy, and in all the negotiations with Tasker, he was acting solely as the agent of the defendants, and in furtherance of their interests. He was authorized as agent of the plaintiff simply to receive delivery of the policy. But we submit, that an agency to receive delivery of an instrument is not an agency to receive notice of its contents; and delivery to such a one does not imply notice of the contents of the instrument delivered. Delivery may be to a third person, who, in the absence of dissent, becomes the agent for that purpose. *Peavey* v. *Tilton*, 18 N. H. 151; *Buffum* v. *Green*, 5 N. H. 71, 80; *Cook* v. *Brown*, 34 N. H. 460, 475. Now, in such a case, does reception of the deed by the third person imply knowledge of its contents? We do not conceive that it does. If not, such a delivery cannot, *per se*, charge the principal with such notice.

The agreement with Tasker was that he should be kept insured. He had no knowledge, and could not foresee, that when that agreement came to be executed by the company, it would be by an instrument charged with a condition such as this. He had a right to suppose it would be by the execution of a policy in conformity with the general law of the land. Before he was permitted to see this policy, or to know its contents, it was ordered by the defendant company to be sent to their home office; and for this purpose this very agent was made use of. Of course, the plaintiff is to be affected by everything which is of the essence of the contract; but

when the defendants by their own act deprived him of the possession of the policy, and when the only person existing who knew its contents was their own general agent, acting for them throughout this very transaction, and when the defendants, by these acts, have shown an intention to deprive the plaintiff of knowledge of the contents of this policy, and have succeeded in fact in doing so, it seems to us it would be a strange doctrine, indeed, which should hold, in favor of these defendants, that the plaintiff is chargeable with knowledge of this collateral provision, and that he was bound to act in view of it.

When the defendants required Robinson, first, "to hold the policy," and shortly afterwards to send it to the home office, they knew they were depriving, and it was doubtless done with the intention of depriving, Tasker of knowledge of its contents.    By this act they waived the provision in question, and estopped themselves to set it up, unless they could show that he in fact possessed knowledge of it.    This they did not offer to do; and the jury, under instructions requested by the defendants themselves, have found that neither Tasker nor his attorney had knowledge of it, " or notice of such facts in regard to it as should have put them, as reasonable men, on inquiry in regard to it."    There was competent evidence of a waiver of it.    *Currier* v. *Ins. Co.*, 53 N. H. 538, 550, 551, 552.    To apply the general rule of law, that notice to an agent is notice to his principal, to a case like this, would be an application of a technical rule to the destruction of justice.    The plaintiff had a right to possession of the policy; he had a right to rely upon its possession as his means of information of its contents.    Had the defendants, in good faith, allowed him its possession, it would have been reasonable and just that he should be charged with knowledge of, and estopped to deny that he knew, its contents.    But when, by the wrong of the defendants themselves, he was deprived of its possession, and, with that, of his means of informing himself, we submit that it would be a most unjust rule which should allow the defendants, contrary to the truth, to insist that he knew, or ought to have known, of the existence of this provision.    How can this company say that it was Tasker's fault, or his negligence, that he did not know of this provision of the policy ?    It was the fault and the wrong of this company itself which deprived him of the means of such knowledge.

DOE, C. J.    The alleged contract on which the plaintiff brings this suit, is a policy of insurance written by Robinson.    If this policy is not a contract made by Robinson as agent of both parties, it is not a contract made by anybody.    Robinson's knowledge of it was, in legal effect, the plaintiff's; and at the time of the fire this constructive information was all the knowledge of the contract the plaintiff had.    Robinson was not merely the plaintiff's agent for the purpose of receiving the policy.    Their agreement was, that

Robinson should keep the plaintiff insured in three good companies to the amount of $3,000. By this agreement Robinson was authorized, as agent of the plaintiff, to make all legal contracts of insurance necessary for keeping the plaintiff insured in three good companies to the amount of $3,000. This agreement is the sole foundation of the plaintiff's case. In the supposed exercise of authority given by this agreement, Robinson undertook to make the contract on which the plaintiff brings this suit.

One provision of the policy is, that no suit shall be maintained upon it unless commenced within a year from the date of loss; and this suit was not commenced within that time. There is no evidence that the defendants waived this stipulation. By withholding the policy from the plaintiff, they did not give him to understand, and did not induce him to act upon the understanding, that they waived the limitation. As they did not cause him to believe, or to change his position in the belief, that they waived the limitation, they are not estopped to deny that the suit was brought within the time prescribed by the contract.

The plaintiff cannot avoid the limitation on the ground that he had no knowledge of it, and his agent was not authorized to assent to it. If the contract on which the suit is brought was ever made by anybody, it was made, on the part of the plaintiff, by Robinson as his agent. In making it, Robinson necessarily assumed to act as agent of both parties. And whether the plaintiff claims the contract as his, by previous authorization or subsequent ratification, is immaterial. It is not his unless the knowledge and assent of Robinson, acting as agent of the plaintiff, were the plaintiff's knowledge and assent. Robinson's authority to make the contract, as agent of the plaintiff, included authority to know what the contract was that he made. As the defendants are charged with knowledge of facts known to their agent *(Patten* v. *Ins. Co.,* 40 N. H. 375), so the plaintiff, in this suit upon a written contract made in his behalf by his agent, is charged with his agent's knowledge of the contract. The case is as if the plaintiff had written the contract himself. He cannot enforce stipulations favorable to himself, and reject the rest. A written contract that does not express the intention of the parties may be reformed in equity: but in this suit at law the policy cannot be altered by parol evidence. *Preston* v. *Ins. Co.,* 58 N. H. 76, 77; *Webster* v. *Webster,* 33 N. H. 18, 25; *Glass* v. *Hulbert,* 102 Mass. 24, 34–36. Other questions raised by the defendants need not be considered. The motion for a nonsuit should have been granted.

*Verdict set aside.*

STANLEY, J., did not sit: the others concurred.