**SOVEREIGN CAMP, W. O. W., v. MARTINEZ et ux.**

**No. 10400.**

Court of Civil Appeals of Texas. Galveston.

May 20, 1937.

Dissenting Opinion June 8, 1937.

Rehearing Denied June 10, 1937.

Battaile & Burr, of Houston, for appellant.

Burris & Benton, of Houston (F. F. Benton, of Houston, of counsel), for appellees.

GRAVES, Justice.

This appeal is from a judgment of the district court of Harris county, sitting without a jury, whereby the appellees (as beneficiaries of their deceased son, Ebelio Martinez were awarded a recovery against the appellant (a fraternal beneficiary association, duly incorporated) of $1,370 as the double indemnity benefit of $1,000, together with statutory penalties and attorneys' fees added for delay in payment, called for in event of accidental drowning, under a certificate of life and accident insurance it had issued to Ebelio Martinez; the learned trial court, at appellant's request, filed findings of fact and law in support of its judgment, those of fact having been agreed to by both sides, but those of law being challenged herein by the Sovereign Camp, upon the sole contention that the double indemnity so allowed the appellees, as for the accidental drowning of their son, was interdicted by the terms of the certificate the appellees sued upon, in that it expressly and validly conditioned appellant's liability therefor upon its being established by the testimony of at least one other "eye-witness" to the occurrence than the assured member, that the death of the latter resulted from accidental drowning, which had not been done; in other words, that, by subdivision 10 of section 57 of its by-laws, it had specifically and legally limited its contractual obligation to pay the double indemnity provided for, only in those instances of accidental death by drowning where there had been shown to be such another "eye-witness" thereto. In support of such construction of the given by-law, it cites these authorities: Becker v. Interstate Business Men's Acc. Ass'n (C.C.A.) 265 F. 508; Couch, "Cyc. of Ins. Law," p. 4669; Lundberg v. Interstate Business Men's Acc. Ass'n, 162 Wis. 474, 156 N.W. 482, Ann.Cas.1916D, 667; Roeh v. Business Men's Ass'n, 164 Iowa, 199, 145 N.W. 479, 51 L.R.A.(N.S.) 221, Ann.

Cas.1915C, 813; Rollins v. Business Men's Ass'n, 204 Mo.App. 679, 220 S.W. 1022; Schumacher v. National Travelers' Ben. Ass'n, 118 Kan. 523, 235 P. 844; Southern Travelers' Ass'n v. Shattuck (Tex.Civ. App.) 2 S.W.(2d) 568 (writ of error refused); Supreme Ruling of Fraternal Mystic Circle v. Hoskins (Tex.Civ.App.) 171 S.W. 812; Werner v. Travelers' Protective Ass'n (D.C.) 31 F.(2d) 803, affirmed in (C.C.A.) 37 F.(2d) 96, 97; Wertheimer v. Travelers' Protective Ass'n (C.C.A.) 64 F. (2d) 435.

The appellees, in turn, answer with these two counter considerations, together with their relied upon authorities, severally appended thereto:

"(1) The 'eye-witness' by-law contained in Sec. 57, Paragraph 10, of the Constitution, Laws, and By-Laws of the appellant, by its terms is made subject to the provisions of the certificate, and, being inconsistent with its provisions, the by-laws can present no defense to appellees' cause of action. 1 Couch on Insurance, 338, § 168; Francis v. International Travelers' Ass'n (Tex.Civ.App.) 260 S.W. 938, affirmed in 119 Tex. 1, 23 S.W.(2d) 282; McCoy v. Northwestern Mut. Relief Ass'n, 92 Wis. 577, 66 N.W. 697, 47 L.R.A. 684; Pledger v. Business Men's Ass'n (Tex.Com.App.) 228 S.W. 110."

"(2) The 'eye-witness' By-Law, being Sec. 57, Subd. 10, of appellant's Constitution, Laws and By-Laws, cannot prevent recovery by appellees under the double-indemnity provision of the benefit certificate, because the By-Law is void and invalid, being against public policy in attempting to control and modify the procedure of the courts, to make rules of evidence, and oust the courts of their jurisdiction. Article 3713, Revised Civ.Stat.1925; Bankers' Health & Acc. Ass'n v. Wilkes (Tex.Civ.App.) 209 S.W. 230, 233, error refused; International Travelers' Ass'n v. Branum, 109 Tex. 543, 212 S.W. 630, reversing and remanding (Tex.Civ.App.) 169 S.W. 389; International Travelers' Ass'n v. Powell, 109 Tex. 550, 212 S.W. 931; Rollins v. Business Men's Ass'n, 204 Mo.App. 679, 220 S.W. 1022; Southern Travelers' Ass'n v. Shattuck (Tex. Civ.App.) 2 S.W.(2d) 568, error refused; Sovereign Camp v. Robinson (Tex.Civ. App.) 187 S.W. 215, error refused; Sovereign Camp v. Boden (Tex.Civ.App.) 286 S. W. 330, affirmed in 117 Tex. 229, 1 S.W.(2d) 256, 61 A.L.R. 682; 10 Texas Jurisprudence, 210; Werner v. Travelers' Protective Ass'n,

37 F.(2d) 96, 97; Wertheimer v. Travelers' Protective Ass'n (C.C.A.) 64 F.(2d) 435."

The classes of cases, thus severally invoked by the parties, as concerns the single theorem so relied upon by appellant, seem to this court to respectively apply two different but well-recognized rules of law that run along legal parallels; that is, those of appellant reflect holdings that such an insurer may in its contract with the member, by proper provision with that objective, specially except from the coverage an accidental death by drowning when there is in fact no other eyewitness thereto than the member himself, while those of the appellees exemplify instances where the legal and reasonable effect of the agreement, properly construed, is not just to fix the kind or character of the accident covered, but to require the claimant to establish the accidental character of the drowning by the testimony of at least one person other than the member, who was an eyewitness to it, which contravenes our expressed public policy.

If that be sound, the only remaining inquiry on that feature is, Which class does this policy fall in?

As apropos, the facts deemed material on the whole case will now be briefly recapitulated:

The court found as a fact that Ebelio Martinez met his death from bodily injury effected solely through external, violent, and accidental means, directly and independently of all other causes; that is, by accidental drowning; that appellant had promptly paid the initial $1,000 death benefit for the death, but refused payment of the double indemnity specified, on the ground it was not liable therefor; that none of the exceptions set out in the double indemnity rider to the certificate existed; that the fact that the drowning of Ebelio Martinez was accidental was not established by the testimony of at least one person other than deceased, who was an eyewitness to such drowning.

The double indemnity agreement in the certificate itself, and subdivision 10, section 57, of the by-laws, are as follows, the italics being added thereto:

"Supplementary Agreement attached to and made a part of and subject to the terms and conditions of a certificate of membership in the Sovereign Camp of the Woodmen of the World No. L–942034–L on the life of E. Martinez, the member.

"Double-Indemnity Benefit:

*"The Association will pay Two Thousand Dollars, less any indebtedness to the Association hereon, in lieu of the face amount of said certificate, upon receipt of due proof that the death of the member resulted, directly and independently of all other causes, from bodily injury effected solely through external, violent, and accidental means* and within sixty days after sustaining such injury. This Double Indemnity Benefit shall not apply if the member's death resulted from self-destruction, whether sane or insane; from any violation of the law by the member; from military or naval service in time of war; from riot, insurrection, or war, or any act incident thereto; from engaging, as a passenger or otherwise, in submarine or aeronautic operations; from participating in professional automobile racing; from physical or mental infirmity; or directly or indirectly from illness or disease of any kind. The Association shall have the right and opportunity to make an autopsy."

"Sec. 57. The following conditions, *except as otherwise provided in the certificate,* shall apply to every beneficiary, and shall be binding on both the member and the beneficiary:

"Tenth. The Association shall not be liable for the payment of double indemnity under any beneficiary certificate providing for double indemnity in case of the death of the member by accident, where it is claimed that death resulted from accidental drowning, cutting, poisoning, hanging, discharge of fire arms or shooting, unless the fact that such drowning, cutting, poisoning, hanging, discharge of fire arms or shooting was accidental shall be established by the testimony of at least one person other than the member, who was an eye witness to such drowning, cutting, poisoning, hanging, discharge of fire arms or shooting."

The material conclusions of law of the able trial court were: (1) That the proofs of Ebelio Martinez's death by accidental drowning entitled the appellees to the $1,000 double indemnity awarded them; (2) that subdivision 10, section 57, of appellant's constitution and by-laws was void and invalid, hence constituted no defense to its liability under the double indemnity clause of the policy.

On consideration of the record, this court not only approves the quoted legal conclusion, but also the appellees' further objection that the by-law pleaded in bar of the double recovery awarded presented no defense against it, because inconsistent with the certificate itself.

It seems clear that the facts of this cause do not classify it with those relied upon by the appellant, of which the Shattuck and Wertheimer Cases cited by it supra are outstanding examples, in that in those two cases, et id genus omne, the insurance contract itself was one simply, plainly, and specifically limiting the liability of the insurer to that particular kind of accidental death where there was no other eyewitness except the member himself, not undertaking in any manner to prescribe how the fact of accidental death should be established in court; whereas in the case at bar, as in that of Rollins, Wilkes, and others cited supra by the appellees, the plain objective of the language used was not in advance to fix the kind or character of accidental death to be covered, but to provide that when any litigants claimed or sued in court seeking to hold the appellant for the double indemnity it had in the main contract itself, that is, the certificate, unconditionally agreed to pay for death by accidental drowning, save only in nine specified instances, that they should be required to establish the fact itself that the drowning had been accidental in a manner not provided by our law; that is, contrary to the provisions of R.S. art. 3713, that it must be done by the testimony of at least one other eyewitness to the drowning than the deceased himself; reduced to its ultimate, this provision simply amounted to undertaking by the contract—not to limit the liability to a particular class or kind of accidental death as such, but to set at naught the law of the state as to how litigious controversies should be settled, substituting instead the agreement of the parties to the contract involved upon a different method. And if that be its effect, it clearly falls within the ban of the authorities the appellees have so cited.

It is recognized that in the only two Texas appellate court cases involving eyewitness clauses in such policies, to which this court has been referred, that is, the Wilkes and Shattuck Cases cited supra, the former was decided upon a finding of fact that there had been another eyewitness present, and that the latter, as seems to us, is easily distinguishable from this cause, in that the insurer there unmistakably contracted that it would not be liable for a particular kind of accident, for instance, when no eyewitness was present; it is still true, however, that the policy involved in the

Wilkes Case, containing as it did this provision: "the claimant *shall establish the accidental character of the injury by the testimony of at least one eyewitness to the accident* other than the insured himself," was not in legal effect in anywise distinguishable from the by-law here, and that that court considered its validity doubtful, "Inasmuch as this clause endeavors by contract to fix rules of evidence binding upon courts of justice, and to control judicial proceedings."

Little need be added, it is thought, to point out such a repugnance between the invoked by-law, and the unconditional obligation in the certificate itself in this instance binding the appellant to pay the double indemnity upon the occurrence of death by accidental means as therein specified; it then goes further, and by the principle of exclusion, particularizes nine conditions only of accidental death under which the double indemnity would not apply, thereby in effect plainly saying it would be payable in all others, the absence of an additional eyewitness to the death not being one of them; since, further, under the express recitation at the beginning of by-law 57, the eyewitness requirement was only to apply in case it had not already been otherwise provided in the certificate itself, it seems no further indication of an existing repugnance is needed.

There is no contention presented here that this contract was ultra vires of the association to make, nor could there well be in the circumstances; neither is there any doubt, under our holdings, that its provisions will not only be construed most strongly against the insurer, but also that this by-law 57, being in its terms and purport subject to the provisions of the certificate, cannot have the effect of limiting or rendering useless the unconditional obligation so first expressed in the quoted certificate.

Without further discussion, the judgment will be affirmed.

PLEASANTS, C. J., dissenting.

PLEASANTS, Chief Justice (dissenting).

I am constrained to dissent from the opinion of the majority of this court affirming the judgment of the trial court.

There is no conflict in the testimony, all of which shows that the deceased insured, while on a boat party down the Houston Ship Channel, with a number of friends, became intoxicated and was drowned by falling, jumping, or being pushed or thrown overboard. No one saw how the deceased went overboard, and no one saw him in the act of drowning. After the boat had returned from the trip down the channel, it was discovered that Ebelio Martinez, the insured, was missing, and a complete search was made for the deceased. Approximately four days from the date of the boat party a body was found near Brady's Island afloat in the channel. This body was identified as being that of Ebelio Martinez. With this addition, the facts are sufficiently stated in the majority opinion.

There is no real difference in the facts of this case and the facts in the case of Southern Travelers' Ass'n v. Shattuck (Tex.Civ.App.) 2 S.W.(2d) 568, and the other cases cited by appellant. It seems to me that the distinction drawn by counsel for appellee and the authorities cited by them which the majority opinion approves and follows is an exhibition of mental gymnastics "that would a hair divide; 'twixt its northwest and its southeast side."

It may be a deficiency in his powers of imagination, but the argument of the appellee that the provisions of the insurance certificate and the by-laws of the association pleaded by appellant as limiting its liability, "are invalid and void, being against public policy in attempting to control and modify the procedure of courts, to make the rules of evidence, and divest the courts of their jurisdiction," find no lodgment in the mind of the writer.

It seems clear to the writer, that whatever may be the rule in other jurisdictions, the Shattuck Case, supra, in which a writ of error was denied by our Supreme Court, is conclusive against appellees' contention.

Having reached this conclusion, I respectfully dissent from the opinion of the majority affirming the judgment, which, in my opinion, should be reversed and judgment here rendered in favor of appellant.

On Appellant's Motion for Rehearing.

GRAVES, Justice.

The motion for rehearing has been carefully considered, but this court is unconvinced of error in its original disposition of the cause; since our former opinion therein was filed, the San Antonio Court of Appeals, in Sovereign Camp v. De Martinez, 103 S.W.(2d) 995, 998, in what this court considers to be a sound interpretation, gives the same construction to appellant's

"eye-witness" clause in section 57, paragraph 10, of its by-laws, as was given by this court, differentiating, in necessary effect, this case from that of Southern Travelers' Association v. Shattuck (Tex. Civ.App.) 2 S.W.(2d) 568, in this language:

"A careful reading of the double indemnity rider with its general excepted risks on the face thereof, together with the quoted provision, leads us to the conclusion that the quoted by-law is not an excepted risk at all but a rule of evidence. The provision does not classify accidental deaths that will or will not be compensable, as did the provision in Southern Travelers' Association v. Shattuck, supra, but only provides payment for accidental deaths which may be established by one eyewitness other than the member. There may be an accidental death where there are twenty eyewitnesses under the quoted provision, but, if one of the number is not presented on the trial, no compensation is allowed. * * * If the provision had classified accidental deaths with an eyewitness other than insured, and accidental deaths without an eyewitness other than the insured, providing for the payment for the former, and denying payment for the latter, it would clearly come within the rule as announced in the Shattuck Case, supra, and we would be compelled to follow it. It seems clear to us that by the quoted by-law provision the association says: 'We are dissatisfied with the rule of evidence which allows accidental injury to be proven by circumstantial evidence, notwithstanding the fact that it has been recognized as a just and salutary rule through the ages. Unless you are able to establish your case by one eye-witness testifying on the trial other than the member, there will be no liability.'

"Our statute, article 3713, provides: 'The common law of England as practiced and understood shall, in its application to evidence, be followed and practiced by the courts of this State, so far as the same may not be inconsistent with this title or any other law.'

"We need cite no authority to demonstrate that under the common law of England a case could be made on circumstantial evidence which would be sufficient to sustain an action for accidental injury by gun-shot wounds, and of course it is not contended that we have any statute in Texas changing the common-law rule. Therefore it follows that the quoted provision of the by-laws of the association offends against this statute. Likewise we believe that it is an unreasonable by-law."

It is true that the facts in the cause before that court were not identical with those here existing, but that is immaterial as affects the court's view concerning the meaning of the by-law, upon which alone reliance is had in this cause.

The rehearing will be refused.

PLEASANTS, C. J. dissenting.